**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Quicksilver Resources Inc., <u>et al.</u>,[1] | ) | Case No. 15-10585 (LSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**GLOBAL NOTES AND STATEMENT OF LIMITATIONS,**
**METHODS, AND DISCLAIMERS REGARDING DEBTORS' SCHEDULES**
**OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") are filing their respective Schedules of Assets and Liabilities (the "<u>Schedules</u>") and Statements of Financial Affairs (the "<u>Statements</u>") in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>"). The Debtors, with the assistance of their advisors, prepared the Schedules and Statements in accordance with section 521 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

These Global Notes and Statement of Limitations, Methods, and Disclaimers Regarding Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs (collectively, the "<u>Global Notes</u>") pertain to, are incorporated by reference in, and comprise an integral part of all of the Schedules and Statements. These Global Notes should be referred to and reviewed in connection with any review of the Schedules and Statements.[2]

The Schedules and Statements have been prepared by the Debtors' management and are unaudited and subject to further review and potential revision. In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records as it was available at the time of preparation. The Debtors' management and advisors have made reasonable efforts to ensure that they are as accurate and complete as possible under the circumstances based on information that was available to them at the time of preparation.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Quicksilver Resources Inc. [6163]; Barnett Shale Operating LLC [0257]; Cowtown Drilling, Inc. [8899]; Cowtown Gas Processing L.P. [1404]; Cowtown Pipeline Funding, Inc. [9774]; Cowtown Pipeline L.P. [9769]; Cowtown Pipeline Management, Inc. [9771]; Makarios Resources International Holdings LLC [1765]; Makarios Resources International Inc. [7612]; QPP Holdings LLC [0057]; QPP Parent LLC [8748]; Quicksilver Production Partners GP LLC [2701]; Quicksilver Production Partners LP [9129]; and Silver Stream Pipeline Company LLC [9384]. The Debtors' address is 801 Cherry Street, Suite 3700, Unit 19, Fort Worth, Texas 76102.

[2] These Global Notes are in addition to any specific notes contained in each Debtor's Schedules or Statements. The fact that the Debtors have prepared a Global Note with respect to any of the Schedules and Statements and not to others should not be interpreted as a decision by the Debtors to exclude the applicability of such Global Note to any of the Debtors' remaining Schedules and Statements, as appropriate.

However, subsequent information or discovery may result in material changes to the Schedules and Statements, and inadvertent errors or omissions may exist. Notwithstanding any such discovery or new information, however, the Debtors may, but shall not be required to, update the Schedules and Statements.

**Global Notes Control**. In the event that the Schedules and Statements differ from the Global Notes, the Global Notes shall control.

**Reservation of Rights**. Nothing contained in the Schedules and Statements or these Global Notes shall constitute a waiver of any of the Debtors' rights or an admission with respect to their chapter 11 cases, including, but not limited to, any issues involving objections to claims, substantive consolidation, equitable subordination, defenses, characterization or recharacterization of contracts, assumption or rejection of contracts under the provisions of Bankruptcy Code chapter 3, or causes of action arising under the provisions of Bankruptcy Code chapter 5 or any other relevant applicable laws to recover assets or avoid transfers.

**Description of the Case and "as of" Information Date**. On March 17, 2015 (the "Petition Date"), each of the Debtors filed a petition for relief with the Bankruptcy Court under Bankruptcy Code chapter 11. The Debtors continue to operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. On March 19, 2015, the Bankruptcy Court entered an order jointly administering these cases pursuant to Bankruptcy Rule 1015(b). On March 25, 2015, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed a statutory committee of unsecured creditors pursuant to Bankruptcy Code section 1102(a)(1) (the "Committee").

Unless specifically noted otherwise, all asset values are as of the Petition Date, and all other amounts listed in the Schedules and Statements are as of the Petition Date.

**Corporate Structure**. A description of the Debtors' corporate structure is set forth in the Declaration of Vanessa Gomez LaGatta in Support of First Day Pleadings, which was filed on the Petition Date.

**Amendment**. Although reasonable efforts were made to file complete and accurate Schedules and Statements, inadvertent errors or omissions may exist. Thus, the Debtors reserve all rights, but shall not be required to, to amend or supplement their Schedules and Statements from time to time as may be necessary or appropriate.

**Basis of Presentation**. For financial reporting purposes, the Debtors and certain of their non-Debtor affiliates historically prepare consolidated financial statements. Unlike the consolidated financial statements, the Schedules and Statements, except where otherwise indicated, reflect the assets and liabilities of each Debtor on a nonconsolidated basis. Accordingly, the totals listed in the Schedules and Statements will likely differ, at times materially, from the consolidated financial reports prepared by the Debtors for financial reporting purposes or otherwise.

Although these Schedules and Statements may, at times, incorporate information prepared in accordance with generally accepted accounting principles ("GAAP"), the Schedules and Statements do not purport to represent or reconcile financial statements otherwise prepared

2

or distributed by the Debtors in accordance with GAAP or otherwise.  To the extent that a Debtor shows more assets than liabilities, this is not an admission that the Debtor was solvent at the Petition Date or at any time prior to the Petition Date.  Likewise, to the extent that a Debtor shows more liabilities than assets, this is not an admission that the Debtor was insolvent at the Petition Date or at any time prior to the Petition Date.

**Consolidated Accounts Payable and Disbursement System**.  The Debtors utilize consolidated accounts payable and disbursement systems in their day-to-day operations, the effect of which, in part, is that certain accounts payable and or payment detail is not readily available on a legal entity basis.  Although efforts have been made to attribute open payable amounts to the correct legal entity, the Debtors reserve their right to modify or amend the Schedules and Statements to attribute such payable to a different legal entity, if appropriate.  Payments made are listed by the entity making such payment, notwithstanding that many such payments may have been made on behalf of another entity.

**Confidentiality**.  There may be instances within the Schedules and Statements where names and/or addresses have been suppressed.  Contemporaneously herewith, the Debtors have filed the *Debtors' Motion for Entry of an Order Authorizing the Debtors to Redact and Seal the Identities of a Limited Number of Parties from Schedule G and SOFA 3(b)* seeking authority to redact and seal such information.

**Intercompany Claims and Transfers**.  Receivables and payables among the Debtors in these cases (each an "<u>Intercompany Receivable</u>" or "<u>Intercompany Payable</u>") are reported in the Schedules.  To the extent that a Debtor owes an Intercompany Payable, it is reported on Schedule F as a claim of such Debtor.  To the extent a Debtor has an Intercompany Receivable, it is reported on Schedule B16 as an asset of such Debtor.  While the Debtors have used reasonable efforts to ensure that the proper intercompany balances are attributed to each legal entity, all rights to amend these items on the Schedules and Statements are reserved.

Intercompany transfers can be characterized in many ways. The Debtors reserve all of their rights with respect to the intercompany balances listed in the analysis, including, but not limited to, the appropriate characterization of such intercompany balances and the amounts of such balances, which are still being identified by the Debtors.

The Debtors have listed all Intercompany Payables as unsecured nonpriority claims on Schedule F for each applicable Debtor, but reserve their rights, except as otherwise may be agreed to pursuant to a stipulation filed with the Bankruptcy Court, to later change the characterization, classification, categorization, or designation of such claims, including by designating all or any portion of the amounts listed as secured.

**Insiders**.  For purposes of the Schedules and Statements, the term "insiders" shall have the meaning set forth in Bankruptcy Code section 101(31).

Persons listed in the Statements as insiders have been included for informational purposes only.  The Debtors do not take any position with respect to (a) such person's influence over the control of the Debtors; (b) the management responsibilities or functions of such individual; (c) the decision-making or corporate authority of such individual; or (d) whether such individual

206716275

could successfully argue that he or she is not an insider under applicable law, including, without limitation, the federal securities laws, or with respect to any theories of liability or for any other purpose.

**Recharacterization**.  The Debtors have made reasonable efforts to characterize, classify, categorize, and designate the claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements correctly.  The Debtors reserve all rights to recharacterize, reclassify, recategorize, and redesignate items reported in the Schedules and Statements at a later time as is necessary or appropriate as additional information becomes available, including, without limitation, whether contracts listed herein were executory as of the Petition Date or remain executory postpetition and whether leases listed herein were unexpired as of the Petition Date or remain unexpired postpetition.

**Summary of Significant Reporting Policies**.

Current Market Value and Net Book Value.  In many instances, current market valuations are neither maintained by nor readily ascertainable by the Debtors.  It would be prohibitively expensive and unduly burdensome to obtain current market valuations of the Debtors' property interests that are not maintained or readily ascertainable.  Accordingly, unless otherwise indicated, the Schedules and Statements reflect the net book values as of the Petition Date, rather than current market values, of the Debtors' assets as of the Petition Date and may not reflect the net realizable value.  For this reason, amounts ultimately realized will vary, at some times materially, from net book value.  Additionally, the amount of certain assets and liabilities may be "undetermined," and, thus, ultimate assets and liabilities may differ materially from those stated in the Schedules and Statements.

Liabilities.  Unless otherwise indicated, all liabilities are listed as of the Petition Date.

Credits and Adjustments.  The claims of individual creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtors' books and records and may not reflect credits, allowances, or other adjustments due from such creditors to the Debtors.  The Debtors reserve all of their rights with regard to such credits, allowances, and other adjustments, including the right to assert claims objections and/or setoffs with respect to the same.

Leases.  In the ordinary course of business, certain of the Debtors may enter into agreements titled as leases for property, minerals, or other real property interests and equipment from third-party lessors for use in the daily operation of their businesses.  Any known pre-petition obligations of the Debtors' pursuant to the same have been listed on Schedule F.  The underlying lease agreements are listed on Schedule G, or, if the leases are in the nature of real property interests under applicable state law, on Schedule A.  Nothing in the Schedules and Statements is, or shall be construed to be, an admission as to the determination of the legal status of any lease (including whether any lease is a true lease, a financing arrangement or a real property interest), and the Debtors reserve all rights with respect to such issues.

Joint Interest Billings. The Debtors are the operators for a number of oil and gas wells in which the Debtors hold an interest, many under joint operating or joint exploration agreements

206716275

with other parties.  In connection with the daily operation of those wells, the Debtors incur numerous lease operating expenses for which the Debtors are then reimbursed by their partners for their share of the expenses.  Where the Debtors hold non-operating working interests in wells under various joint operating agreements, the Debtors reimburse the operator for its share of the relevant costs—production expenses, taxes, etc.  The Debtors were authorized to make all payments on account of the foregoing under applicable first-day and second-day orders issued by the Bankruptcy Court (collectively, the "First Day Orders"), and such accrued and payable amounts are not reflected on the Schedules and Statements.  For more information, readers should refer to the *Debtors' Motion for Entry of Interim and Final Orders Authorizing the Debtors To Pay or Honor Pre-Petition and Post-Petition Royalty Obligations, Working Interest Obligations and Other Obligations Related to Oil and Gas Leases* [D.I. 13].

**Excluded Assets and Liabilities**.  The Debtors have excluded certain categories of assets and liabilities from the Schedules and Statements, such as de minimis deposits, certain prepaid expenses, and accrued liabilities, including, without limitation, tax accruals, and accrued accounts payable.  In addition and as set forth above, the Debtors have excluded accrued amounts for which the Debtors have been granted authority to pay pursuant to a First Day Order or other order that may be entered by the Bankruptcy Court.  Other immaterial assets and liabilities may also have been excluded.

In addition, in the ordinary course of their business, the Debtors are party to pooling agreements that relate to certain of the Debtors' oil and gas leases.  Generally, pooling is the consolidation and combining of leased land with adjoining leased tracts.  Pooling has the benefit to the production company of uniting all landowners' leases into a common pool and utilizing one common underground geological reservoir. Such pooling agreements have not been included in response to the Schedules or Statements.

**Undetermined Amounts**.  The description of an amount as "unknown," "TBD," or "undetermined" is not intended to reflect upon the materiality of such amount.

**Estimates**.  To close the books and records of the Debtors as of the Petition Date and to prepare such information on a legal entity basis, the Debtors were required to make estimates, allocations, and assumptions that affect the reported amounts of assets and revenue and expenses as of the Petition Date.  The Debtors reserve all rights, but shall not be required, to amend the reported amounts of assets, revenue, and expenses to reflect changes in those estimates and assumptions.

**Totals**.  All totals that are included in the Schedules represent totals of all known amounts included in the Debtors' books and records as of the Petition Date.  To the extent that there are undetermined amounts, and to the extent that the Debtors made postpetition payments on prepetition claims pursuant to the First Day Orders or other order of the Bankruptcy Court, the actual total may be different from the listed total.

**Classifications**.  Listing a claim (a) on Schedule D as "secured," (b) on Schedule E as "priority," or (c) on Schedule F as "unsecured priority," or listing a contract or lease on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal

rights of the claimant or a waiver of the Debtors' right to recharacterize or reclassify such claim, contract, or lease.

**Claims Description**.  Any failure to designate a claim on a given Debtor's Schedules as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtor that such amount is not "disputed," "contingent," or "unliquidated."  The Debtors reserve all rights to dispute, or to assert any offsets or defenses to, any claim reflected on their respective Schedules on any grounds, including, without limitation, amount, liability, validity, priority, or classification, or to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated."  Listing a claim does not constitute an admission of liability by the Debtors, and the Debtors reserve the right, but shall not be required, to amend the Schedules accordingly.

**Guarantees and Other Secondary Liability Claims**.  The Debtors have used their reasonable efforts to locate and identify guarantees and other secondary liability claims (collectively, the "Guarantees") in their executory contracts, unexpired leases, secured financing, debt instruments, and other such agreements.  The Debtors' review of their contracts in such regard is ongoing.  Where such Guarantees have been identified, they have been included in the relevant Schedule for the Debtor or Debtors affected by such Guarantees.  The Debtors have placed Guarantee obligations on Schedule H for both the primary obligor and the guarantor of the relevant obligation.  Such Guarantees were additionally placed on Schedule D or Schedule F, as appropriate, for each guarantor, except to the extent that such Guarantee is associated with obligations under an executory contract or unexpired lease identified on Schedule G.  Further, certain Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements may have been inadvertently omitted.  Thus, the Debtors reserve their rights to amend the Schedules to the extent that additional Guarantees are identified.  In addition, the Debtors reserve the right, but shall not be required, to amend the Schedules and Statements to recharacterize or reclassify any such contract, lease, claim, or Guarantee.

**Causes of Action**.  The Debtors, despite their efforts, may not have listed all of their causes of action (filed or potential) against third parties as assets in the Schedules and Statements.  The Debtors reserve all of their rights with respect to any causes of action they may have, and neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any such causes of action.

In the ordinary course of their business, from time to time, the Debtors become involved in litigation and informal disputes among third parties because the Debtors may hold funds on account of mineral or other interests that are the subject of the dispute.  Where litigation has commenced, the funds in question are interpled into the applicable court; in other instances, i.e., where there is a dispute but no cause of action has been commenced, the Debtors hold the funds on account in suspense.  With regard to litigation, upon the conclusion or settlement of the matter, the court typically orders that the interpled funds be paid to the appropriate party.  With respect to informal disputes, upon receipt of a fully executed settlement agreement, the Debtors release the funds in question to the appropriate third party as directed by the settlement agreement.  Because these funds are not property of their estates, the Debtors do not believe that they have any liability on account of such litigation.  However, such causes of action are listed out of an abundance of caution.  The Debtors reserve all of their rights with respect to such

causes of action.  Listing a pending cause of action does not constitute an admission of liability by the Debtors, and the Debtors reserve the right to amend the Schedules accordingly.

**Schedule A – Real Property**.  Under Texas law, which governs the Debtors' operations with respect to their oil and gas leases in the United States, a landowner's royalty interests, overriding royalty interests, non-executive mineral interests, and non-participating royalty interests are real property interests in land.  The Debtors have included information about the leases governing such interests on Schedule A, but have not duplicated such leases on Schedule G regardless of whether such leases may be executory contracts within the meaning of Bankruptcy Code section 365.  Specifically, the Debtors have included the county and state where such leases are located; however, the Debtors have not listed out each lease individually. The list of such leases is voluminous, making it unduly burdensome and costly for the Debtors to list out each lease individually on the Schedules.  Upon reasonable request, the Debtors will provide to interested parties a full list of such leases, including a unique identifier and detailed description of each lease.

Certain of the leases reflected on Schedule A may contain renewal options, guarantees of payments, options to purchase, rights of first refusal, rights to lease additional lands, and other miscellaneous rights.  Such rights, powers, duties, and obligations are not separately set forth on Schedule A.  The Debtors hereby expressly reserve the right to assert that any lease listed on Schedule A is an executory contract within the meaning of Bankruptcy Code section 365.  The Debtors reserve all of their rights, claims, and causes of action with respect to claims associated with any contracts and agreements listed on Schedule A or Schedule G, including their right to dispute or challenge the characterization or the structure of any transaction, document, or instrument (including any intercompany agreement) related to a creditor's claim.

Except where otherwise noted, the Debtors have included the book value of real property assets.  With respect to certain oil and gas properties for which the value is undetermined on Schedule A, such properties are tested for impairment based on a ceiling test analysis.  For further information about these impairment charges, readers should refer to Form 10-K (Annual Report) dated December 31, 2014 at pp. 89-90, which is available at http://investors.qrinc.com/sec.cfm.  With respect to the oil and gas leases for which an undetermined value is reflected on Schedule A, a determination of the value of each lease would be unduly burdensome and cost prohibitive.

Certain of the responses on Schedule A indicate that the Nature of Debtor's Interest in Property includes both surface and mineral rights.  Where a value of the Debtor's interest is provided in connection with such response, the value is attributable only to surface rights and not to mineral rights.  The value of mineral rights is undetermined.

The Debtors are continuing their review of all relevant documents and reserve the right to amend all Schedules at a later time as necessary, or otherwise recharacterize their interests in such real property at a later date. Further, due to the volume of the Debtors' real and personal property holdings, the Debtors may have listed certain assets as real property when such holdings are, in fact, in the nature of personal property holdings or executory contract, or the Debtors may have listed certain assets as personal property assets when such holdings are, in fact, real property holdings. The Debtors reserve all of their rights, but shall not be required, to

recategorize and/or recharacterize such asset holdings at a later time to the extent that the Debtors determine that such holdings were improperly listed.

The Debtors' failure to list any rights in real property on Schedule A should not be construed as a waiver of any such rights that may exist, whether known or unknown at this time.

**Schedule B – Personal Property**.  Personal property owned by any of the Debtors is listed in the Schedule B for that individual Debtor.  To the extent that the Debtors have not been able to identify the actual physical location of certain personal property, the Debtors have reported the address of that individual Debtor's principal place of business.

Exclusion of certain intellectual property shall not be construed as an admission that such intellectual property rights have been abandoned, terminated, assigned, expired by their terms, or otherwise transferred pursuant to a sale, acquisition, or other transaction.

Schedule B(2) –Financial Accounts. Cash balances and account descriptions are as of March 17, 2015. In accordance with the *Supplemental Interim Order on Debtors' Motion for (A) Authority to (I) Continue Using Existing Cash Management System, (II) Honor Certain Pre-Petition Obligations Related to the Use of the Cash Management System, and (III) Maintain Existing Bank Accounts and Business Forms; and (B) An Extension of Time to Comply With Bankruptcy Code Section 345(b) and Local Rule 4001-3* [D.I. 185], the Debtors had until April 30, 2015 to comply with Bankruptcy Code section 345(b) and Rule 4001-3 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.  As of the filing of the Schedules, the Debtors are in compliance with the Bankruptcy Code 354(b) and Local Rule 4001-3 and certain accounts labeled as "investment accounts" have either been closed or converted to deposit accounts.

Schedule B(3) – Security Deposits With Public Utilities, Telephone Companies, Landlords and Others. By order dated April 14, 2015, the Court approved certain adequate assurance of payment for future utility service. In connection therewith, the Debtors provided certain deposits to utility providers which deposits are not listed on Schedule B, which is prepared as of the Petition Date. In addition, the Debtors have settled or are in the process of settling additional requests for certain security deposits with public utilities in accordance with the procedures set forth in that order. To the extent the Debtors have settled a request, such settlement is not listed on Schedule B, which is prepared as of the Petition Date.

Schedule B(9) – Interests in Insurance Policies.  The Debtors' interests in insurance policies were disclosed in the *Debtors' Motion for Interim and Final Orders Authorizing, But Not Directing, the Debtors to (A) Continue Pre-Petition Insurance Coverage and (B) Maintain Funding for the Insurance Brokers* [D.I. 9] and the *Debtors' Motion for Entry of Interim and Final Orders Authorizing, but Not Directing the Debtors to (A) Pay Pre-Petition Employee Wages, Other Compensation, and Reimbursable Employee Expenses and (B) Continue Employee Benefits Programs* [D.I. 5].  The Debtors believe that there is little or no cash value in such insurance policies.  Accordingly, such policies have not been listed on Schedule B.

Schedule B(13)– Stocks and interests in businesses and B(14) Interests in Partnerships or Joint Ventures. Equity interests in subsidiaries and affiliates primarily arise from common stock

8

ownership. Each Debtor's "Schedule B – Personal Property" lists such Debtor's ownership interests, if any, in subsidiaries and affiliates. For purposes of these Statements and Schedules, the Debtors have listed the value of such ownership interests as undetermined because the fair market value of such stock or interests is dependent on numerous variables and factors and may differ significantly from the net book value.

Schedule B(16) – Accounts Receivable. In the ordinary course of the Debtors' business, cash settlements must occur after the completion of an accounting settlement cycle, which typically takes 60 days following a production month-end. The timeframe to a net proceed calculation for a given production month requires the following steps: invoicing of joint interest partners and purchasers, payment of capital and operating expenses, receipt of gross sales revenues, receipt of gross gathering, processing and transportation expense payments, receipt of joint interest billing payments, and disbursement of payments to royalty owners. These steps are necessarily accomplished over the span of 60 days following the end of a production month. Accordingly, there is a significant amount of accounts receivable owed to the Debtors as of the Petition Date, which will be recouped in the ordinary course of business likely by the end of May or June.

The Debtors have not included an allowance for doubtful accounts receivable in their response to Schedule B.

Schedule B(21) – Other Contingent and Unliquidated Claims of Every Nature, Including Tax Refunds, Counterclaims of the Debtor, and Rights to Setoff Claims. In the ordinary course of their business, the Debtors may have or may accrue certain rights to refunds, counterclaims, setoffs, refunds with its customers and suppliers, or potential claims against its suppliers. Such claims are not known and quantifiable as of the Petition Date, and accordingly, are not listed on Schedule B.

Schedule B(22) – Patents, Copyrights, and Other Intellectual Property and B(23) – Licenses, Franchises, and Other General Intangibles. In the ordinary course of their business, the Debtors are required to obtain operating and other permits from federal, state, and local government authorities and from regulatory bodies. The Debtors believe that these permits have little or no cash value and have not included them in their response to Schedule B. Additionally, the Debtors own certain copyrights, URLs, and other intellectual property that have little or no cash value and have not included them in their response to Schedule B.

Schedule B(28) – Office Equipment, Furnishings and Supplies and B(29) – Machinery, Fixtures, Equipment and Supplies Used in Business. The Debtors' business is a complex enterprise. Although the Debtors have made every effort to ensure the accuracy of Schedules B(28) and B(29), inadvertent errors, omissions, or inclusion may have occurred. Additionally, there may be certain assets the value for which is included in a fixed asset group or certain assets with a net book value of zero which are not set forth on Schedule B(28) or B(29).

Schedule B(35) – Other Personal Property of Any Kind Not Already Listed. The Debtors' response to Schedule B(35) includes certain oil and gas derivatives. The commencement of these chapter 11 cases, however, represented an event of default under the Debtors' derivative agreements resulting in a termination right by counterparties on the

206716275

remaining derivative position at March 17, 2015.  For further information on this topic, readers should refer to Form 10-Q (Quarterly Report) dated March 31, 2015 at Item 3, which is available at http://investors.qrinc.com/sec.cfm.

**Schedule D – Creditors Holding Secured Claims**.  Except as otherwise agreed pursuant to a stipulation and agreed order or general order entered by the Bankruptcy Court that is, or becomes, final, the Debtors and their successors reserve the right to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a creditor listed on Schedule D of any Debtor.  Moreover, although the Debtors may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a lien has been undertaken.

The Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument (including, without limitation, any intercompany agreement) related to such creditor's claim.  In certain instances, a Debtor may be a co-obligor or guarantor with respect to scheduled claims of other Debtors, and no claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other entities.  The descriptions in Schedule D are intended to be only a summary.  Reference to the applicable loan agreements and related documents and a determination of the creditors' compliance with applicable law is necessary for a complete description of the collateral and the nature, extent, and priority of any liens.  Nothing in the Global Notes or the Schedules and Statements shall be deemed a modification or interpretation of the terms of such agreements or related documents.

The claims listed on Schedule D arose, or were incurred, on various dates, and a determination of each date upon which each claim arose, or was incurred, would be unduly burdensome and cost prohibitive.  Accordingly, not all such dates are included for each claim.  All claims listed on Schedule D, however, appear to have arisen, or to have been incurred, prior to the Petition Date.

Real property lessors, utility companies, and other parties that may hold security deposits have not been listed on Schedule D.  The Debtors have not included on Schedule D parties that may believe their claims are secured through setoff rights; deposits posted by, or on behalf of, the Debtors; or inchoate statutory liens rights.

The Debtors' Schedule D reflects an amount arising under the Amended and Restated Credit Agreement, dated as of December 22, 2011 (as amended, supplemented or otherwise modified, the "U.S. Credit Agreement").  As of the Petition Date and as set forth in the *Final Order Under 11 U.S.C. §§ 105, 361, 362, 363 and 507, and Bankruptcy Rule 2002, 4001 and 9014 (I) Authorizing Debtors to Use Cash Collateral, and (II) Granting Adequate Protections to Prepetition Secured Parties* [D.I. 307] (the "Final Cash Collateral Order"), aggregate principal amount due under the U.S. Credit Agreement was not less than $137,300,000 and not less than $9,700,000 in face amount of undrawn Letters of Credit (as defined in the U.S. Credit Agreement), plus accrued and unpaid interest, indemnification obligations, obligations arising under Swap Agreements (as defined in the U.S. Credit Agreement), Bank Products Obligations

(as defined in the U.S. Credit Agreement), and fees and expenses (including, without limitation, the reasonable fees and expenses of the Global Administrative Agent's attorneys, consultants, accountants, experts and financial advisors) and other obligations incurred in connection therewith. Additionally, Schedule D reflects an amount arising under the Amended and Restated Credit Agreement, dated as of December 22, 2011 (as amended and supplemented or otherwise modified, the "Canadian Credit Agreement"). As of the Petition Date and as set forth in the Final Cash Collateral Order, the aggregate principal amount due under the Canadian Credit Agreement was not less than $97,500,000 and not less than $28,500,000 in face amount of undrawn Letters of Credit (as defined in the Canadian Credit Agreement), plus accrued and unpaid interest, indemnification obligations, obligations arising under Swap Agreements (as defined in the Canadian Credit Agreement), Bank Products Obligations (as defined in the Canadian Credit Agreement) and fees and expenses (including, without limitation, the reasonable fees and expenses of the Canadian Administrative Agent's attorneys, consultants, accountants, experts and financial advisors) and other obligations incurred in connection therewith. Pursuant to the Final Cash Collateral Order, the Debtors have used proceeds from the termination of hedges to repay portions of the principal amount due under the U.S. Credit Agreement and Canadian Credit Agreement. As a result, as of June 5, 2015, the principal balance due under the U.S. Credit agreement was $81,817,405 and under the Canadian Credit Agreement was $82,734,606.[3]

**Schedule E – Creditors Holding Unsecured Priority Claims**. Listing a claim on Schedule E as "unsecured priority" does not constitute an admission by the Debtors of the legal rights of the claimant. The Debtors hereby expressly reserve the right to assert that any claim listed on Schedule E, including, but not limited to, claims in excess of $12,475 (as applicable), does not constitute an unsecured priority claim under Bankruptcy Code section 507 thereby constituting an unsecured nonpriority claim.

By final order dated April 14, 2015, the Bankruptcy Court granted the Debtors authority to pay or honor certain prepetition obligations for employee wages, salaries, bonuses and other compensation, reimbursable employee expenses, and employee medical and similar benefits. The Debtors have not listed on Schedule E any wage or wage-related obligations for which the Debtors have been granted authority to pay pursuant to a First Day Order or other order that may be entered by the Bankruptcy Court. The Debtors believe that all such claims have been, or will be, satisfied in the ordinary course during their chapter 11 cases pursuant to the authority granted in the relevant First Day Order or other order that may be entered by the Bankruptcy Court.

The claims listed on Schedule E arose, or were incurred on, various dates and a determination of each date upon which each claim arose, or was incurred, would be unduly burdensome and cost prohibitive. Accordingly, not all such dates are included for each claim. All claims listed on Schedule E, however, appear to have arisen, or to have been incurred, on or before the Petition Date.

**Schedule F – Creditors Holding Unsecured Nonpriority Claims**. Pursuant to certain First Day Orders, the Bankruptcy Court has authorized the Debtors to pay certain outstanding prepetition claims, such as certain royalty obligations, employee wages and benefits claims, claims for taxes and fees, and utility claims. Although not all claims previously paid pursuant to

---

[3] Based on an exchange rate from June 5, 2015.

a First Day Order will be listed in the Schedules and Statements, certain of these claims that have been paid may appear in the Schedules and Statements.  Regardless of whether such claims are listed in the Schedules and Statements, to the extent that such claims are paid pursuant to an order of the Bankruptcy Court (including the First Day Orders), the Debtors reserve all rights to amend or supplement their Schedules and Statements as necessary and appropriate.

Listing a claim on Schedule F as "unsecured nonpriority" does not constitute an admission by the Debtors of any legal rights of the claimant.  The Debtors hereby expressly reserve the right to assert that any claim listed on Schedule F does not constitute an unsecured nonpriority claim (including the right to assert that any such claim constitutes a secured or priority claim).  Additionally, noting that a claim on Schedule F is "subject to setoff" does not constitute an admission by the Debtor of the legal rights of the claimant.  The Debtors hereby expressly reserve the right to assert that any claim listed on Schedule F is not subject to setoff or dispute any claim to such setoff.

The Debtors have attempted to relate all liabilities to the applicable Debtor.  However, due to the related nature of the Debtors' businesses, debts of one Debtor may be inadvertently listed on the Schedules of another.  Readers of the Schedules should review all of the Debtors' Schedules for a complete understanding of the unsecured debts of the Debtors.

The Debtors may have certain rights of setoff and/or recoupment with respect to the claims set forth on Schedule F.  The Debtors reserve all rights to challenge such setoff and/or recoupment rights asserted.   Additionally, certain creditors may assert mechanic's, materialman's, or other similar liens against the Debtors for amounts listed on Schedule F.  The Debtors reserve their right to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be perfected by a creditor listed on Schedule F.

Schedule F does not include certain deferred charges, deferred liabilities, accruals, or general reserves.  Such amounts are, however, reflected on the Debtors' books and records as required in accordance with GAAP.  Such accruals are general estimates of liabilities and do not represent specific claims as of the Petition Date.

The claims listed on Schedule F arose, or were incurred, on various dates, and a determination of each date upon which each claim arose, or was incurred, would be unduly burdensome and cost prohibitive.  Accordingly, not all such dates are included for each claim. All claims listed on Schedule F, however, appear to have arisen, or to have been incurred, prior to the Petition Date.

**Schedule G – Executory Contracts and Unexpired Leases**.  Although reasonable efforts have been made to ensure the accuracy of Schedule G regarding executory contracts and unexpired leases, the Debtors' review is ongoing, and inadvertent errors, omissions, or over-inclusion may have occurred.

Under Texas law, which governs the Debtors' operations with respect to the oil and gas leases in the United States, a landowner's royalty interests, overriding royalty interests, non-executive mineral interests, and non-participating royalty interests are real property interests in land.  The Debtors have included the leases governing such interests on Schedule A, but have not

duplicated such leases on Schedule G regardless of whether such leases may be executory contracts within the meaning of Bankruptcy Code section 365.  The Debtors hereby expressly reserve the right to assert that any lease listed on Schedule A is an executory contract within the meaning of Bankruptcy Code section 365.

Any and all of the Debtors' rights, claims, and causes of action with respect to the contracts, agreements, and leases listed on Schedule G are hereby reserved and preserved.  The Debtors hereby reserve all of their rights to dispute the validity, status, and enforceability of any contracts, agreements, or leases set forth on Schedule G and to amend or supplement such Schedule as necessary.

The Debtors may have included certain interests in real property, such as easements, rights of way, and other interests on Schedule G.  The placing of a contract or lease onto Schedule G shall not be deemed an admission that such contract is an executory contract or unexpired lease, or that it is necessarily a binding, valid, and enforceable contract.  The Debtors hereby expressly reserve the right to assert that any agreement listed on Schedule G does not constitute an executory contract within the meaning of Bankruptcy Code section 365.

The Debtors may have entered into various other types of agreements in the ordinary course of their business, such as surety bond agreements, letters of credit, indemnity agreements, supplemental agreements, amendments/letter agreements, and confidentiality agreements.  Such documents may not be set forth in Schedule G.  Moreover, the contracts, agreements, and leases listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppels, certificates, letters or other documents, instruments, and agreements that may not be listed on Schedule G.  Portions of some contracts and leases that are listed on Schedule G may have been fully performed, while other portions of the same contracts and leases may remain executory or unexpired.

Certain of the contracts, agreements, and leases listed on Schedule G may contain renewal options, guarantees of payments, options to purchase, rights of first refusal, rights to lease additional space, and other miscellaneous rights.  Such rights, powers, duties, and obligations may not be set forth on Schedule G.

Certain of the agreements listed on Schedule G may be in the nature of conditional sales agreements or secured financings.  The presence of these agreements or any other agreements on Schedule G does not constitute an admission that any such agreement is an executory contract or unexpired lease.

The Debtors reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on Schedule G, including the right to dispute or challenge the characterization or the structure of any transaction, document, or instrument.  Certain executory agreements may not have been memorialized in writing and could be subject to dispute.  Generally, executory agreements that are oral in nature have not been included in the Schedule.  Further, the Debtors may be parties to various other agreements concerning real property, such as easements, rights of way, subordination, non-disturbance, supplemental agreements, amendments/letter agreements, title documents, consents, site plans, maps, and other miscellaneous agreements.  Such agreements, if any, are not set forth in Schedule G.

The Debtors have attempted to list the appropriate Debtor parties to each contract, agreement, and lease on Schedule G. However, there may be instances in which other Debtor entities that are not parties to the contracts, agreements, and leases have been the primary entities conducting business in connection with these contracts, agreements, and leases. Accordingly, the Debtors have listed certain contracts, agreements, and leases on Schedule G of the Debtor entity corresponding to the applicable contracting entity, which may, upon further review, differ from the primary entity conducting business with the counterparty to that particular contract, agreement, or lease. Additionally, certain of the contracts, agreements, and leases listed on Schedule G may have been entered into by more than one of the Debtors.

The Debtors' interests in insurance policies were disclosed in the *Debtors' Motion for Interim and Final Orders Authorizing, But Not Directing, the Debtors to (A) Continue Pre-Petition Insurance Coverage and (B) Maintain Funding for the Insurance Brokers* [D.I. 9]. Accordingly, such policies have not been listed on Schedule G.

The Debtors have excluded contracts that have been rejected by order of the Bankruptcy Court from Schedule G.

**Schedule H – Co-Obligors**. Although the Debtors have made every effort to ensure the accuracy of Schedule H, inadvertent errors, omissions, or inclusions may have occurred. The Debtors hereby reserve all rights to dispute the validity, status, and enforceability of any obligations set forth on Schedule H and to further amend or supplement such Schedule as necessary.

The Debtors further reserve all rights, claims, and causes of action with respect to the obligations listed on Schedule H, including the right to dispute or challenge the characterization or the structure of any transaction, document, or instrument related to a creditor's claim. The listing of a contract, guarantee, or other obligation on Schedule H shall not be deemed an admission that such obligation is binding, valid, or enforceable.

In the ordinary course of their business, the Debtors are involved in pending or threatened litigation and claims arising out of the conduct of their business. These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counter-claims against other parties. Because such claims are listed elsewhere in the Statements and Schedules, they have not been set forth individually on Schedule H.

Schedule H also reflects guarantees by various Debtors. The Debtors may not have identified certain guarantees that are embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements. Further, the Debtors believe that certain of the guarantees reflected on Schedule H may have expired or may no longer be enforceable. Thus, the Debtors reserve their right, but shall not be required, to amend the Schedules to the extent that additional guarantees are identified or such guarantees are discovered to have expired or unenforceable.

**Statements Question 2 – Other Income**. From time to time, the Debtors may have de minimis income from sources other than the operation of business that is not provided in response to Statement Question 2.

**Statements Question 3(b) and (c) – Payments to Creditors**.  The Debtors' response to Statement Question 3(b) may include remittances to the lessors of the Debtors' oil and gas leases of such lessors' share of revenue from the producing wells located on the respective leases pursuant to the terms of their oil and gas lease.  In addition, the response may include remittances of overriding royalties to the owners of those interests, and the holders of non-executive mineral interests, as well as the holders of non-participating royalty interests pursuant to applicable agreements.  Such remittances do not represent property of the Debtors' estates.  In addition, the Debtors are obligated under various agreements to market the oil and gas production of certain owners of working interests to potential purchasers and remit the amounts due to the appropriate parties.  Specifically, following the sale of production and the receipt of proceeds attributable thereto, the Debtors are obligated to remit the net amount of those proceeds belonging to the owner of the working interest, net of all applicable mineral interests, gathering costs, processing and transportation expenses, and production taxes, as applicable.  Certain agreements require the Debtors to process and forward to the appropriate parties, from funds otherwise belonging to third parties, the amounts due on account of such interests and expenses.  The foregoing amounts are not property of the Debtors' estates, but may be included in response to Statement Question 3(b).

All amounts that remain outstanding to any creditor listed on Statement Question 3 are reflected on Schedules D, E, and F, as applicable.  Any creditor wishing to verify any outstanding indebtedness should review those schedules.

Certain intercompany transactions are accounted for through transfers of cash to and from appropriate bank accounts in and out of the Debtors' cash management system after certain adjustments are made to intercompany accounts receivable and accounts payable among the Debtors and their Debtor and non-Debtor affiliates.  These payments and transactions have not been listed.  However, readers of the Schedules and Statements wishing to verify any outstanding Intercompany Payables and Intercompany Receivables should refer to Schedules B16, D, or F, as applicable.

The Debtors' response includes payments made to such creditors who are or were insiders only to the extent that such payments were made during the time in which the creditor was an insider and only in that creditor's capacity as an insider.

Statements Question 3(c).  The Debtors' response to Statements Question 3(c) includes certain payments made to insiders on or about February 27, 2015 on account of cash retention bonuses.  For further information about these bonuses, readers should refer to Form 8-K (Current Report) dated February 27, 2015, which is available at http://investors.qrinc.com/sec.cfm.  In addition, the Debtors' response reflects bonus payments generally made in accordance with the schedule below:

| Date of Payment | Description |
| --- | --- |
| March 31, 2014 | 2013 Performance Bonus |
| May 30, 2014 | 2012 Retention Bonus (Second Installment) |
| July 15, 2014 | 2013 Retention Bonus |
| September 30, 2014 | New Officer Sign-On Bonus |
| December 1, 2014 | 2014 Retention Bonus |

| December 19, 2014 | 2014 Performance Appreciation Payment |
|---|---|
| January 15, 2015 | Promotion Bonus[4] |
| January 15, 2015 | 2015 Retention Bonus |
| February 27, 2015 | 2014 Performance Bonus |
| February 27, 2015 | 2015 Retention Bonus (which program replaced and superseded certain contractual obligations from pre-existing retention bonus programs) |

As disclosed in the *Debtors' Motion for Entry of Interim and Final Orders Authorizing, but Not Directing the Debtors to (A) Pay Pre-Petition Employee Wages, Other Compensation, and Reimbursable Employee Expenses and (B) Continue Employee Benefits Programs* [D.I. 5], the Debtors maintain, for all eligible full-time U.S. employees, a qualified defined contribution plan that meets the requirements of sections 401(a) and 401(k) of the Internal Revenue Code. Payments made under such plan for the benefit of insiders have not been listed in response to Statements Question 3(c) or 23.

**Statements Question 7 – Gifts**.  Although the Debtors have made reasonable efforts to ensure that the gifts listed in response to Statements Question 7 include all gifts made, given the magnitude of the Debtors' operations, certain gifts may have inadvertently been omitted from the Statements.  In addition, in connection with marketing efforts, certain employees may have made gifts on behalf of the company, which were reimbursed to such employees by the Debtors.  Such gifts are not reflected on the response to Statements Question 7.

**Statements Question 8 – Losses**.  The Debtors' response to Statements Question 8 includes losses that occurred within one year prior to the Petition Date through and including May 27, 2015.

**Statements Question 9 – Payments Related to Debt Counseling or Bankruptcy**.  All payments related to debt counseling or bankruptcy made to the Debtors' advisors are listed on the Statements of Quicksilver Resources Inc. and represent payments made for themselves and their affiliates, except as specifically noted on the Statements.  Payments made to Deloitte Transactions and Business Analytics LLP include payments made in connection with John Little's position as Strategic Alternatives Officer to the Debtors.

**Statements Question 13 – Setoffs**.  The Debtors routinely incur setoffs and netting of payments during the ordinary course of their business.  Setoffs and nettings in the ordinary course can result from various items including intercompany transactions, counterparty settlements, pricing discrepancies, rebates, returns, warranties, and other transaction true-ups. These normal setoffs and nettings are consistent with the ordinary course of business in the Debtors' industry and can be particularly voluminous, making it unduly burdensome and costly for the Debtors to list all normal set-offs.  Therefore, normal setoffs and nettings are excluded from the Debtors' responses to Statements Question 13.

---

[4] For further information about this Promotion Bonus, readers should refer to Form 8-K (Current Report) dated December 12, 2014 and Form 10-K/A filed March 18, 2014 for the period ending December 31, 2013, which are available at http://investors.qrinc.com/sec.cfm.

**Statements Question 14 – Property Held for Another Person**.  In connection with their oil and gas assets, the Debtors are obligated, pursuant to their oil and gas leases and other agreements, to remit to the lessors of the oil and gas leases and potentially other parties their share of revenue from the producing wells located on the respective leases pursuant to the terms of their oil and gas lease.  In addition, overriding royalties must be remitted to the owners of those interests, and the holders of non-executive mineral interests, as well as the holders of non-participating royalty interests, must receive the proceeds due to them pursuant to the applicable agreement.   As of the Petition Date, the Debtors held approximately $12.3 million owed to the holders of the mineral and other interests.  The foregoing amounts were authorized to be paid under applicable First Day Orders, are not property of the Debtors' estates, and are not included in Statements Question 14.  Included in the foregoing is approximately $2.3 million attributable to suspended funds (the "Suspended Funds").  The Suspended Funds represent amounts that are due and owing to certain holders of mineral and other interests, but are otherwise unpayable for a variety of reasons, including incorrect contact information, ongoing disputes over ownership of the underlying interest, and failure to meet minimum payout requirements.  To the extent that the issue preventing payment of Suspended Funds to a particular interest holder is resolved, the Debtors release the Suspended Funds in question.

The Debtors are obligated under various agreements to market the oil and gas production of certain owners of working interests to potential purchasers and remit the amounts due to the appropriate parties.  Specifically, following the sale of production and the receipt of proceeds attributable thereto, the Debtors are obligated to remit the net amount of those proceeds belonging to the owner of the working interest, net of all applicable mineral interests, gathering costs, processing and transportation expenses, and production taxes, as applicable.  Certain agreements require the Debtors to process and forward to the appropriate parties, from funds otherwise belonging to third parties, the amounts due on account of such interests and expenses.  The foregoing amounts were authorized to be paid under applicable First Day Orders, are not property of the Debtors' estates, and are not included in Statements Question 14.

Pursuant to the Debtors' Joint Exploration Agreement with Eni Petroleum US LLC ("Eni"), dated November 1, 2013, as amended, and the Joint Operating Agreement attached thereto, the Debtors periodically make cash calls to Eni.  Eni then transfers funds to the Debtors to pay for, and reimburse the Debtors for, expenses that the Debtors incur as operator related to wells drilled thereunder.  Such deposits are made into a special account (the "ENI Operating Account").  By segregating the funds into the ENI Operating Account, funds intended for expenses pursuant to the joint operating agreement referenced above do not become commingled with funds used for general purposes in the U.S. Operating Account.

**Statements Question 15 – Prior Addresses**.  From time to time, in the ordinary course of business, the Debtors buy and sell real property interests, including fee simple interests in land, in connection with their operations.  The Debtors have not disclosed the addresses of these properties.  Rather, the address of each Debtor's main center of operations or headquarters has been included in response to Statements Question 18(a).

**Statements Question 17(b) – Environmental Information**.    The Debtors have endeavored to disclose all applicable information in response to Statements Question 17.  The Debtors' tracking system for any spills, however, was updated in 2012 to allow for easier

recovery of such data.  The Debtors have endeavored to include reportable spills or releases of Hazardous Material that occurred before 2012 in their response.  However, to fully research and report such events that may have occurred before that time would require significant time and resources and as a result would be unduly burdensome.

**Statements Question 18(a) – Location of Business**.  The Debtors have disclosed the address of each Debtor's main center of operations or headquarters and have not included information regarding any related ground stations, warehousing, or storage facilities, or any other site or location where a portion of a Debtor's business operations are conducted.

**Statements Question 19(d) – Books, Records, and Financial Statements**.  Pursuant to the requirements of the Securities Exchange Act of 1934, as amended, Quicksilver Resources Inc. has filed with the U.S. Securities and Exchange Commission (the "SEC") reports on Form 8-K, Form 10-Q, and Form 10-K.  These SEC filings contain consolidated financial information relating to the Debtors.  Additionally, consolidated financial information for the Debtors is posted on the company's website at www.qrinc.com.  Because the SEC filings and the website are of public record, the Debtors do not maintain records of the parties that requested or obtained copies of any of the SEC filings from the SEC or the Debtors.

In addition, the Debtors provide certain parties, such as banks, auditors, potential investors, vendors, and financial advisors with financial statements that may not be part of a public filing.  The Debtors do not maintain complete lists to track such disclosures.  As such, the Debtors have not provided lists of these parties in response to this question.

**Statements Question 21(b) – Current Partners, Officers, Directors and Shareholders**.  The Debtors have excluded from Statements Question 21(b) shareholders who hold less than five percent of each Debtor's voting or equity securities.  For a full list of equity securities holders of Quicksilver Resources Inc., readers of the Schedules and Statements should refer to the *List of Equity Security Holders Pursuant to Fed. R. Bankr. P. 1007(a)(3)* [D.I. 145] filed on March 31, 2015.

**Statements Question 23 – Distributions to an Insider**.  Payments to insiders have been listed in response to Statements Question 3(c).  Certain intercompany transactions are accounted for through transfers of cash to and from appropriate bank accounts in and out of the Debtors' cash management system after certain adjustments are made to intercompany accounts receivable and accounts payable among the Debtor and its Debtor and non-Debtor affiliates.  These payments and transactions have not been listed.  However, readers of the Schedules and Statements wishing to verify any outstanding Intercompany Payables and Intercompany Receivables should refer to Schedules B16, D, or F, as applicable.

# UNITED STATES BANKRUPTCY COURT

## District of Delaware

In re:  **Quicksilver Production Partners GP LLC**　　　　　Case No.　**15-10596 (LSS)**

Debtor

## STATEMENT OF FINANCIAL AFFAIRS

　　　This statement is to be completed by every debtor.  Spouses filing a joint petition may file a single statement on which the information for both spouses is combined.  If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.  An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs.  To indicate payments, transfers and the like to minor children, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian."  Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

　　　Questions 1 - 18 are to be completed by all debtors.  Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25.  **If the answer to an applicable question is "None," mark the box labeled "None."**  If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

<em>DEFINITIONS</em>

　　　*"In business."*  A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership.  An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time.  An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

　　　*"Insider."*  The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor.  11 U.S.C. § 101.

---

None
☑

**1.　Income from employment or operation of business**

　　　State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced.  State also the gross amounts received during the **two years** immediately preceding this calendar year.  (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income.  Identify the beginning and ending dates of the debtor's fiscal year.)  If a joint petition is filed, state income for each spouse separately.  (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

AMOUNT　　　　　　　　　　　　　　　　　　SOURCE

None ☑

**2.    Income other than from employment or operation of business**

State the amount of income received by the debtor other than from employment, trade, profession, operation of the debtor's business during the **two years** immediately preceding the commencement of this case.  Give particulars.  If a joint petition is filed, state income for each spouse separately.  (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|

None ☑

**3.    Payments to creditors**

*Complete a. or b., as appropriate, and c.*

a. *Individual or joint debtor(s) with primarily consumer debts:*  List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600. Indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as  part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency.  (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

None ☐

b. *Debtor whose debts are not primarily consumer debts: List each payment or other transfer to any creditor made* within **90 days** immediately preceding the commencement of the case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $6,225˙.  If the debtor is an individual, indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as  part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments and other transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
|---|---|---|---|

**See Global Notes**

*Amount subject to adjustment on 4/01/16, and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

None ☐

c.  **All debtors:**  List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders.  (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|---|

**See Attachment 3c of Quicksilver Resources Inc.**

None ☐

**4.    Suits and administrative proceedings, executions, garnishments and attachments**

a.  List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case.  (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|

**See Global Notes**

None ☑

b.  Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case.  (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATES OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

None ☑

**5.    Repossessions, foreclosures and returns**

List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

None ☑

**6.    Assignments and receiverships**

a.  Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case.  (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|

None ☑

b.  List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case.  (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION  OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|

---

None ☑

**7.    Gifts**

List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient.  (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
|---|---|---|---|

---

None ☑

**8.    Losses**

List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case**.  (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY  INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
|---|---|---|

---

None ☐

**9.    Payments related to debt counseling or bankruptcy**

List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of a petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYER IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**See Attachment 9 of Quicksilver Resources Inc.**

**10.    Other transfers**

None 

a.    List all other property, other than property transferred in the ordinary course of the business or financial affairs of  the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case.  (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE | RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|---|

None 

b.    List all property transferred by the debtor within ten years immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
|---|---|---|

**11.    Closed financial accounts**

None

List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case.  Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions.  (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|

**12.    Safe deposit boxes**

None

List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case.  (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
|---|---|---|---|



**13.    Setoffs**

List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case.  (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

**14.    Property held for another person**

List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|

**15.    Prior address of debtor**

If debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case.  If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
|---|---|---|



**16.    Spouses and Former Spouses**

If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

None


**17.    Environmental Information**.

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law.

a.  List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law.  Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
| --- | --- | --- | --- |

None

b.  List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
| --- | --- | --- | --- |

None

c.  List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party.  Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
| --- | --- | --- |

None
☑

**18.    Nature, location and name of business**

a.    *If the debtor is an individual*, list the names, addresses, taxpayer-identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

*If the debtor is a partnership*, list the names, addresses, taxpayer-identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity  securities, within **six years** immediately preceding the commencement of this case.

*If the debtor is a corporation*, list the names, addresses, taxpayer-identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO. (ITIN)/ COMPLETE EIN | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|------|------|------|------|------|

None
☑

b.    Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

| NAME | ADDRESS |
|------|------|

The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within **six years** immediately preceding the commencement of this case, any of the following: an officer, director,  managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership, a sole proprietor, or self-employed in a trade, profession, or other activity, either full- or part-time.

*(An individual or joint debtor should complete this portion of the statement **only** if the debtor is or has been in business, as defined above, within six years immediately preceding the commencement of this case.  A debtor who has not been in business within those six years should go directly to the signature page.)*

None
☐

**19.    Books, records and financial statements**

a.    List all bookkeepers and accountants who within **two years** immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

| NAME AND ADDRESS | DATES SERVICES RENDERED |
|------|------|

**See Attachment 19a**

None ☐ b. List all firms or individuals who within **two years** immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

| NAME | ADDRESS | DATES SERVICES RENDERED |
|------|---------|------------------------|
| **Ernst & Young LLP** | **425 Houston Street**<br>**Suite 600**<br>**Fort Worth, TX 76102** | **FY 2013 and 2014**<br>**(Independent Registered**<br>**Public Accounting Firm)** |
| **Whitley Penn LLP** | **1400 West 7th**<br>**Suite 400**<br>**Fort Worth, TX 76102** | **FY 2012 and 2013**<br>**(Audit of Employee Benefit**<br>**Plans)** |

None ☐ c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

| NAME | ADDRESS |
|------|---------|
| **Vanessa Gomez LaGatta**<br>**Senior Vice President, Chief**<br>**Financial Officer and Treasurer** | **801 Cherry Street**<br>**Suite 3700, Unit 19**<br>**Fort Worth, TX 76102** |
| **Romy M. Massey**<br>**Vice President, Chief Accounting**<br>**Officer and Assistant Secretary** | **801 Cherry Street**<br>**Suite 3700, Unit 19**<br>**Fort Worth, TX 76102** |

None ☐ d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued by the debtor within **two years** immediately preceding the commencement of this case.

| NAME AND ADDRESS | DATE ISSUED |
|------------------|-------------|
| **See Global Notes** | |

None ☑ **20.    Inventories**

a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

| DATE OF INVENTORY | INVENTORY SUPERVISOR | DOLLAR AMOUNT OF INVENTORY<br>(Specify cost, market or other basis) |
|-------------------|----------------------|--------------------------------------------------------------------|

None ☑

b.  List the name and address of the person having possession of the records of each of the inventories reported in a., above.

DATE OF INVENTORY                    NAME AND ADDRESSES OF CUSTODIAN OF INVENTORY RECORDS

---

None ☑

**21.    Current Partners, Officers, Directors and Shareholders**

a.  If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

NAME AND ADDRESS                    NATURE OF INTEREST                    PERCENTAGE OF INTEREST

None ☐

b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

NAME AND ADDRESS                    TITLE                    NATURE AND PERCENTAGE NAME AND OF STOCK OWNERSHIP

**See Attachment 21b**

---

None ☑

**22.    Former partners, officers, directors and shareholders**

a.  If the debtor is a partnership, list each member who withdrew from the partnership within **one year** immediately preceding the commencement of this case.

NAME                    ADDRESS                    DATE OF WITHDRAWAL

None ☐

b. If the debtor is a corporation, list all officers or directors whose relationship with the corporation terminated within **one year** immediately preceding the commencement of this case.

NAME AND ADDRESS                    TITLE                    DATE OF TERMINATION

**John C. Regan**                    **Senior Vice President and Chief Financial Officer**                    **12/31/14**

None ☐

**23.    Withdrawals from a partnership or distributions by a corporation**

If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during **one year** immediately preceding the commencement of this case.

| NAME & ADDRESS OF RECIPIENT | RELATIONSHIP TO DEBTOR | DATE AND PURPOSE OF WITHDRAWAL | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|

**See Attachment 3c of Quicksilver Resources Inc.**

None ☐

**24.    Tax Consolidation Group.**

If the debtor is a corporation, list the name and federal taxpayer-identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within **six years** immediately preceding the commencement of the case.

| NAME OF PARENT CORPORATION | TAXPAYER-IDENTIFICATION NUMBER (EIN) |
|---|---|
| **Quicksilver Resources Inc.** | **75-2756163** |

None ☑

**25.    Pension Funds.**

If the debtor is not an individual, ,list the name and federal taxpayer-identification number of any pension fund to which the debtor, as an employer, has been responsible for contributing at any time within **six years** immediately preceding the commencement of the case.

| NAME OF PENSION FUND | TAXPAYER-IDENTIFICATION NUMBER (EIN) |
|---|---|

\* \* \* \* \* \*

*[If completed by an individual or individual and spouse]*

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

Date _____    Signature of Debtor _____

Date _____    Signature of Joint
Debtor (if any) _____

---

*[If completed on behalf of a partnership or corporation]*

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct to the best of my knowledge, information and belief.

Date    June 8, 2015 _____    Signature _____

Print Name and Title    **Vanessa Gomez LaGatta**

**Senior Vice President, Chief Financial Officer and Treasurer**

[An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

---

## DECLARATION AND SIGNATURE OF NON-ATTORNEY BANKRUPTCY PETITION PREPARER (See 11 U.S.C. § 110)

I declare under penalty of perjury that: (1)  I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2)  I prepared this document for compensation and  have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3)  if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required by that section.

Printed or Typed Name and Title, if any, of Bankruptcy Petition Preparer _____    Social-Security No. (Required by 11 U.S.C. § 110.) _____

*If the bankruptcy petition preparer is not an individual, state the name, title (if any), address, and social-security number of the officer, principal, responsible person, or partner who signs this document.*

Address _____

Signature of Bankruptcy Petition Preparer _____    Date _____

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional signed sheets conforming to the appropriate Official Form for each person

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both.  18 U.S.C. § 156.*

**Quicksilver Production Partners GP LLC**
**STATEMENT OF FINANCIAL AFFAIRS**
**ATTACHMENT 19a**

**(19a) Bookkeepers and Accountants Who Within Two Years Immediately Preceding the Filing of the Bankruptcy Case Kept or Supervised the Keeping of Books of Account and Records of the Debtor.**

| NAME AND ADDRESS | TITLE | DATES SERVICES RENDERED |
|---|---|---|
| Vanessa Gomez LaGatta[1]<br>801 Cherry St<br>Suite 3700, Unit 19<br>Fort Worth, TX 76102 | Senior Vice President,<br>Chief Financial Officer and Treasurer | 01/01/15 to Present |
| Romy M. Massey[2]<br>801 Cherry St<br>Suite 3700, Unit 19<br>Fort Worth, TX 76102 | Vice President, Chief Accounting Officer<br>and Assistant Secretary | 12/01/14 to Present |
| John C. Regan[3]<br>801 Cherry St<br>Suite 3700, Unit 19<br>Fort Worth, TX 76102 | Former Senior Vice President and<br>Chief Financial Officer | 04/16/12 to 12/31/14 |

[1] Vanessa Gomez LaGatta has been employed by the Debtors since 09/21/09 holding the following position:
Vice President, Treasurer from 09/21/09 to 12/31/14

[2] Romy M. Massey has been employed by the Debtors since 01/05/12 holding the following positions:
Assistant Controller – Consolidation and Financial Reporting from 01/05/12 to 07/31/12
Controller from 08/01/12 to 11/30/14

[3] John C. Regan has been employed by the Debtors since 09/01/07 holding the following position:
Vice President, Controller and Chief Accounting Officer from 09/01/07 to 04/15/12

**Quicksilver Production Partners GP LLC**
**STATEMENT OF FINANCIAL AFFAIRS**
**ATTACHMENT 21b**

**(21b) Current Partners, Officers, Directors, and Shareholders**

| NAME AND ADDRESS | TITLE | NATURE AND PERCENTAGE OF STOCK OWNERSHIP |
|---|---|---|
| Glenn Darden<br>801 Cherry St, Suite 3700, Unit 19<br>Fort Worth, TX 76102 | President, Chief Executive Officer and Director | |
| Vanessa Gomez LaGatta<br>801 Cherry St, Suite 3700, Unit 19<br>Fort Worth, TX 76102 | Senior Vice President, Chief Financial Officer and Treasurer | |
| Romy M. Massey<br>801 Cherry St, Suite 3700, Unit 19<br>Fort Worth, TX 76102 | Vice President, Chief Accounting Officer and Assistant Secretary | |
| Quicksilver Resources Inc.<br>801 Cherry St, Suite 3700, Unit 19<br>Fort Worth, TX 76102 | Sole Member | 100% Membership Interest |
| Anne Darden Self<br>801 Cherry St, Suite 3700, Unit 19<br>Fort Worth, TX 76102 | Director | |
| Francisco J. Villamar<br>801 Cherry St, Suite 3700, Unit 19<br>Fort Worth, TX 76102 | Secretary | |